933 F.2d 1002
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Fernando ZAPATA, Defendant-Appellant
 No. 90-5228.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1991.
Decided May 22, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Norwood Carlton Tilley, Jr., District Judge. (CR-90-140-02-G)
 David Bruce Freedman, White and Crumpler, Winston-Salem, N.C., for appellant.
 Michael Francis Joseph, Assistant United States Attorney, Greensboro, N.C. (Argued), for appellee; Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before SPROUSE and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Fernando Zapata appeals his jury conviction of possession with intent to distribute cocaine base, under 21 U.S.C. Sec. 841(a)(1) and (b)(1)(A). On appeal, he contends that several remarks made by the prosecutor in his closing argument constitute reversible error. Zapata also challenges the sufficiency of the evidence and the trial court's decision to increase his sentence pursuant to its determination that he was a manager or supervisor in the criminal enterprise. We affirm.
 
 I.
 
 2
 Zapata was arrested by the Greensboro, North Carolina police on May 11, 1990, for possession with intent to distribute cocaine base. The arrest occurred after Zapata and co-defendant Ruth Vasquez departed from an area mall at a high rate of speed arousing the suspicion of nearby officers. After the car was stopped near a grocery store, Vasquez ran inside and hid 99.9 grams of crack cocaine in the potato chip rack. She was arrested shortly thereafter. Zapata was arrested after exiting the vehicle. Both Zapata and Vasquez were indicted by a federal grand jury on one count of possession with intent to distribute cocaine base under 21 U.S.C. Sec. 841(a)(1) and (b)(1)(A). Vasquez pled guilty, with an assistance recommendation from the United States for testifying to details involving Zapata who pled not guilty. At trial Vasquez testified to having first met Zapata in New York where she had observed him in possession of cocaine. She also testified that Zapata had instructed her to conceal the cocaine on her person during their trip to North Carolina, and testified that during the pre-arrest car chase, Zapata handed her a package of cocaine and instructed her to throw it away. Zapata, who offered no evidence at trial, was found guilty and sentenced to 188 months imprisonment followed by five years supervised release.
 
 II.
 
 3
 Zapata principally contends that three statements made by the prosecutor during closing argument were reversible error. First, while admonishing the jury not to discredit Vasquez's testimony due to her physical possession of the cocaine, the prosecutor stated that: "from all our investigation, it indicates that Mr. Zapata owned this crack." Zapata contends this was an improper expression of the prosecutor's own belief as to the evidence and placed the prestige of the government behind Vasquez's testimony. Second, Zapata alleges the prosecutor went outside of the evidence when, in seeking to explain Vasquez's initial reluctance to relate to the police the testimony information about Zapata, the prosecutor stated: "[Ms. Vasquez] told you that she was scared, scared for her family, her children." Likewise, Zapata contends that the prosecutor went outside of the evidence in indicating that Zapata ran when he was approached by the police, stating: "I ask you to ask yourselves why, why would Mr. Zapata run, why would he run at the East Side Grocery when the car was stopped? Why would he do that?"
 
 
 4
 Improper comments by the prosecutor may constitute reversible error where the defendant has been unfairly prejudiced by the conduct so as to deprive him of a fair trial. United States v. Brockington, 849 F.2d 872 (4th Cir.1988). Any statement of personal belief is improper as it jeopardizes the integrity of the trial process. United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983). Since "[t]he sole purpose of closing argument is to assist the jury in analyzing the evidence," United States v. Iglesias, 915 F.2d 1524, 1529 (11th Cir.1990), it is also improper for the prosecutor to go beyond the evidence before the jury during this phase of the trial. The factors this court has found relevant to the determination of possible prejudice to the defendant are "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." United States v. Chorman, 910 F.2d 102, 113 (4th Cir.1990) (quoting United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983)).
 
 
 5
 Nonetheless, much of the possibility of prejudice created by the prosecutor's remarks "could [be] prevented or at least ameliorated" by defense counsel's prompt attempt to intervene and object. United States v. Elmore, 423 F.2d 775, 780 (4th Cir.1970). Moreover, a district judge's instructions may be sufficient to "dissipate most if not all of whatever prejudice had been engendered." Id. at 781.
 
 
 6
 There is no question but the prosecutor's statements constituted error. In our view, however, it was not prejudicial error. Immediately after the prosecutor made the statement in regard to Zapata's ownership of the cocaine, the court on its own initiative cautioned the jury:
 
 
 7
 THE COURT: Ladies and gentlemen of the jury, I'm sure Mr. Joseph did not mean to phrase his last statement as he did. You must find the evidence based solely from the evidence in the case--the testimony, the stipulation, and the exhibits that were admitted in the record. Nothing else is a proper basis for you to form your opinion with regard to the facts in this case
 
 
 8
 After the statement in regard to Vasquez's fear for her family, the court admonished the jury:
 
 
 9
 THE COURT: Ladies and gentlemen, there is absolutely no evidence in this case that there have been any threats or anything of that nature. And you should not consider the statement of Mr. Joseph as indicating that any threats have been made in this case.
 
 
 10
 Finally, immediately after the prosecutor made the statement in regard to Zapata's having run when initially approached by the arresting officers, defense counsel requested a bench conference after which the prosecutor stated:
 
 
 11
 Members of the jury, I was in error when I said that he ran from the East Side Grocery. I don't think there is any evidence that he ran from the East Side Grocery.
 
 
 12
 Whatever prejudice may have resulted from the improper comments was neutralized by the court's curative instruction to the jury and the prosecutor's retraction of the improper statement. See Harrison, 716 F.2d at 1053; see also United States v. Anchondo-Sandoval, 910 F.2d 1234 (5th Cir.1990).
 
 III.
 
 13
 Likewise, we find no merit to Zapata's contentions that there was not sufficient evidence to convict him of possession with intent to distribute cocaine, and that the trial court erred in calculating his sentence.
 
 
 14
 AFFIRMED.